**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

KRISTINA L. SIMMONS, and
MATTHEW L. GUNTHER,

Plaintiffs,

v. CIVIL ACTION NO. 2:04-0356

CITY OF CHARLESTON; DANNY JONES, in his official capacity as the Mayor of the City of Charleston; JERRY PAULEY, in his individual and official capacity as the Chief of Police of the City of Charleston, CPL. TRAVIS HAWLEY, PATROLMAN PAUL ROACH, PATROLMAN CRAIG DICKERSON and PATROLMAN CHARLES RIDER, in their individual and official capacities as police officers for the City of Charleston,

Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the defendants' motion for summary judgment. For the reasons set forth herein, the motion is **GRANTED.**

## I.
## Factual Allegations and Procedural History

Plaintiffs, Simmons and Gunther, in a complaint filed on April 13, 2004, and amended for a second time on July 2, 2004, allege that on January 16, 2004, while waiting in their parked car at the Greyhound Bus Station in Charleston, West Virginia they were surrounded by the defendant police officers (whom it is alleged had their guns drawn)**,** ordered to exit the vehicle, handcuffed,

interrogated, and searched. No charges were filed against the plaintiffs. The plaintiffs seek declaratory, injunctive and monetary relief against the defendants. They allege that not only did the individual officers violate their constitutional rights, but that such deprivation of rights was a result of a custom, policy, or practice of the City of Charleston and the Charleston Police. Specifically, the plaintiffs allege the following: Count I a violation of the Fourth Amendment guarantee against unreasonable searches and seizures pursuant to 42 U.S.C. § 1983; Count II a state law claim for assault and battery; Count III a state law claim for false arrest; and Count IV a state law claim for "intentional outrageous conduct" which the Court interprets as a claim for intentional infliction of emotional distress.

The defendants filed the instant motion for summary judgment on March 7, 2006. The Court, on March 14, 2006, granted the motion of the plaintiffs' counsel, Erica S. Harich, to withdraw as counsel and gave the plaintiffs fourteen days to obtain new representation. As of April 14, 2006, the plaintiffs had not obtained new counsel and the Court entered an Order directing them to inform the Court on or before April 27, 2006, if they had obtained new counsel or intended to file a response to the defendants' motion for summary judgment. The plaintiffs did not respond.

The defendants set forth the following sequence of events for the early morning of January 16, 2004. The defendants maintain that at around 2:00 a.m. on January 16, 2004, a robbery occurred at a local tavern, "Denver's Depot." The robber was described to the police as a white male wearing hunting clothes. The police also had reports of a second suspect fleeing the scene in a blue vehicle in the direction of the Greyhound Bus Station. Soon thereafter, the defendant officers found a blue Ford Taurus with two occupants parked in front of the closed and empty bus station. There were no lights on in the vehicle; however, the officers could see that the driver, Mr. Gunther, was wearing

a camouflage hat.[1] According to the defendants, the officers proceeded to conduct a felony stop, including patting down the plaintiffs and conducting a sweep of their vehicle for weapons. The defendant officers explained to the plaintiffs about the robbery and the reason for the stop. Once the officers realized the plaintiffs' were not the individuals involved in the robbery, they were released.

The defendants deposed both of the plaintiffs and the testimony offered by them supports the defendants' version of events. These depositions are the only evidence before the Court.

## II.
## Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256.

---

[1] The defendants point out that Mr. Gunther could not remember what he was wearing on the evening in question; however, Ms. Simmons testified that Gunther was wearing a camouflage hat. *See* Def. Mot. for Sum. Jud., Exhibit B at 5.

Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

The plaintiffs have failed to respond to the defendants' motion for summary judgment. "Where no response to a summary judgment motion is before a district court, the court is under no duty to search the record for a genuine issue of material fact." *Encompass Insurance v. Clark*, Civ. A. No. 5:05-0101, 2006 WL 784799 at *2 (S.D.W.Va. Mar. 28, 2006). Instead, the nonmoving party "is deemed to have waived its opportunity to designate facts in accordance with Rule 56(e)" and the court "may rely upon the facts advanced by the movant." *Id.*

## III.
## Analysis

### A. 42 U.S.C. § 1983 Claims

The defendants in their motion for summary judgment contend that the defendant officers are protected from the plaintiffs' federal constitutional claim by the doctrine of qualified immunity. Under the doctrine of qualified immunity, government officials who are performing discretionary functions are "generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The court must conduct a two-step inquiry in order to determine if the officer should be afforded the protection of such immunity. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). First, the court must determine "if the officer's conduct

violated a constitutional right." *Id.* If the court finds that no constitutional right has been violated, there is no need for further inquiry. *Id.* However, if it is determined that the plaintiff has alleged sufficient facts to show a constitutional violation, the court must next "consider whether, at the time of the violation, the constitutional right was clearly established, that is, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Gomez v. W.J. Adkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Saucier*, 533 U.S. at 201-02).

The plaintiffs bring a claim under 42 U.S.C. § 1983 for federal constitutional violations. Specifically, the plaintiffs in Count I of their complaint allege the officers' actions on the evening of January 16, 2004, violated their Fourth Amendment guarantee against unreasonable searches and seizure. Pursuant to the Fourth Amendment, a police officer has the authority to stop and briefly detain an individual for investigation where there is "reasonable suspicion that criminal activity is afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Wardlow v. Illinois*, 120 S.Ct. 673, 675-676 (2000). Whether reasonable suspicion to justify a *Terry* stop exists depends on the totality of the circumstances, including information known to the officer and reasonable inferences to be drawn at the time of the stop. *See United States v. Crittendon*, 883 F.2d 326, 328 (4th Cir. 1989).

At the time the defendant officers stopped the plaintiffs and proceeded to detain them for a short period of time and search the vehicle in which they were found, the officers had a reasonable suspicion that the plaintiffs had been involved in criminal activity. The plaintiffs were found in a vehicle matching the description of the suspects' vehicle in front of a closed bus station shortly after the robbery and within close proximity to the location of the crime. Additionally, the plaintiffs

matched the description of the suspects in number, general descriptions, and clothing. Therefore, given the totality of the circumstances, the officers reasonably inferred that the plaintiffs were the suspects wanted for the robbery of the bar.

The Court also notes that Mr. Gunther in his deposition testimony admitted that is was reasonable for the officers, given the information known to them at the time to suspect the plaintiffs had been involved in the crime. While Ms. Simmons in her deposition testimony stated that she did not agree with Mr. Gunther that the police had made a reasonable mistake, the plaintiffs have provided no evidence that the officers lacked a reasonable suspicion that the plaintiffs had been involved in criminal activity shortly before the stop. While the party moving for summary judgment bears the burden of showing there exists no genuine issue as to any material fact, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in [her] favor[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256. The plaintiffs have in contrast produced *no* evidence in support of their claims that the officers' conduct violated the Fourth Amendment. Because the plaintiffs are unable to show that "the officer[s'] conduct violated a constitutional right," the Court need not go any further in its inquiry. *Saucier v. Katz*, 533 U.S. at 201.

**B. State Law Claims and Statutory Immunity**

As with the defendants' claim of qualified immunity as to the plaintiffs' 42 U.S.C. §1983 claims, in determining whether the defendants are entitled to statutory immunity from the plaintiffs' state law claims, the Court must first determine whether the plaintiffs have stated a viable claim before addressing whether statutory immunity applies.

**1. Assault and Battery**

In Count IV of their Complaint, the plaintiffs alleges that the officer defendants' actions constituted assault and battery. Under West Virginia law, to ultimately maintain a claim for battery, the plaintiffs would have to show (1) the officers acted intending to cause harmful or offensive contact with the plaintiffs or to place the plaintiffs in imminent apprehension of such conduct and (2) the plaintiffs must be put in such imminent apprehension. *West Virginia Fire and Casualty Co. v. Stanley*, 602 S.E.2d 483, 495 (W.Va. 2004) (citing Restatement (Second) of Torts § 21 (1965)). Similarly, to establish a claim for assault, the plaintiffs would have to show that the officer defendants (1) acted intending to cause a harmful or offensive contact with the plaintiffs, or in imminent apprehension of such a contact, and (2) harmful contact with the plaintiffs directly or indirectly resulted. *Id.* at 494 (citing Restatement (Second) of Torts, § 13 (1965)).

The only evidence before the Court is the deposition testimony of the plaintiffs. In his deposition, Mr. Gunther does not provide any statements that would lead the Court to find that the defendants acted with the intent to cause harmful or offensive contact with the plaintiffs or even to place them in apprehension of such contact. Rather, Mr. Gunther's deposition testimony shows that the officers, believing that he was pepertrator of a crime, directed Mr. Gunther to exit the vehicle, and walk backwards towards an officer with his hands crossed behind his head. Once Mr. Gunther reached the officer he was directed to lay on the ground face first and an officer handcuffed him. Mr. Gunther testified that the officers did not jerk, pull, or injure him when they handcuffed him. Ms. Simmons recounts a similar experience. Additionally, while Ms. Simmons does state that she officers injured her toe and wrists, the Court finds the plaintiffs have not produced any concrete

evidence that the officers possessed the requisite intent to have committed assault and battery.

**2. False Arrest**

The plaintiffs makes claims for false arrest and illegal detention under state law. The defendants argue that because the officers had probable cause to detain the plaintiffs, their detention was lawful. Under West Virginia law "[t]he gist of an action for malicious prosecution is malicious purpose and lack of probable cause. The gist of the action for false imprisonment is the illegal detention of a person without lawful process or by an unlawful execution of such process." *Vorholt v. Vorholt*, 160 S.E. 916, 917 (W.Va. 1931)*; see also Riffe v. Armstrong*, 477 S.E.2d 535, 549 (W.Va. 1996). Therefore, in determining whether the plaintiffs can maintain a claim for false arrest or illegal detention, the Court's analysis centers on whether the process surrounding the detention was unlawful rather than whether the officers had probable cause to detain them. Both plaintiffs, in their depositions, describe similar events leading up to their temporary detention by the officers. The plaintiffs' vehicle was surrounded by officer with the weapons drawn. The plaintiffs were directed to exit the vehicle in a manner that allowed the officers to see their hands. Upon exiting the vehicle the plaintiffs were handcuffed, questioned, and detained while the officers searched the vehicle. Once the officers determined that the plaintiffs were not the individuals who had robbed the gas station, they were released. Given that the officers believed that the plaintiffs were suspects in an armed robbery, the plaintiffs have failed to provide sufficient evidence to create a genuine issue of material fact that the officers' actions were unlawful.

**3. Intentional Infliction of Emotional Distress**

Finally, in Count IV, the plaintiffs also bring a claim for intentional infliction of emotional distress. The West Virginia Supreme Court of Appeals in *Tolliver v. Kroger Co.* defines the tort of intentional infliction of emotional distress as follows: "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." 498 S.E.2d 702, 710 (W.Va. 1997). The plaintiffs have offered no evidence that the defendants' actions were extreme or outrageous. Rather, both plaintiffs testified that the officers stated that they believed the plaintiffs were suspects in a robbery. While Ms. Simmons testified that she did not believe the officers' explanation for the stop, she offered no evidence of an alternative motivation. Additionally, neither plaintiff has provided any evidence they suffered any emotional distress or bodily harm. Therefore, the Court finds that no genuine issue of material fact remains as to this claim.

## V.

## Conclusion

Therefore, based upon the evidence before the Court, summary judgment in favor of the defendants is appropriate. The plaintiffs have failed to provide any evidence to create a genuine issue of material fact as to the essential elements of their claims. *Celotex Corp. V. Catrett*, 477 U.S. at 322-23 (1996). For the reasons stated, summary judgment is **GRANTED** in favor of the defendants.

The Court **DIRECTS** the Clerk to remove this action from the docket of this Court and to send a copy of this Written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: May 25, 2006

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE